## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DAVE SCARDINA, individually and on behalf of a class, | ) ) ) | Case No. 11 C 3149 |
| Plaintiff, | ) ) | The Honorable George W. Lindberg |
| v. | ) ) | Magistrate Judge Jeffrey T. Gilbert |
| MIDLAND CREDIT MANAGEMENT, INC.; MIDLAND FUNDING LLC; ENCORE CAPITAL GROUP, INC, | ) ) ) ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT– CLASS ACTION

### INTRODUCTION

1.      Plaintiff, Dave Scardina ("Plaintiff"), brings this action individually and on behalf of two classes against Defendants Midland Credit Management, Inc., ("MCM"), Midland Funding LLC ("Midland"), and Encore Capital Group, Inc. ("Encore") (collectively "Defendants").

2.      Defendant MCM, acting on behalf of Defendants Midland and Encore, impermissibly called Plaintiff's cell phone without his prior express consent using an automatic telephone dialing service and/or an artificial or prerecorded voice ("Predictive Dialer"), in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

3.      Plaintiff further alleges that MCM, acting on behalf of Defendants Midland and Encore, violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), by engaging in unlawful credit and collection practices.

4.      The FDCPA broadly prohibits unfair or unconscionable collection methods;  conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or

1

misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information.  15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

5.      The TCPA restricts the use of automated equipment to dial cellular telephones.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1337 (Interstate Commerce), 47 U.S.C. § 227 ("TCPA") *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446 (7th Cir. 2005); and 15 U.S.C. §1692k (FDCPA).

7.      Venue and personal jurisdiction over Defendants in this District is proper because:

      a.      Plaintiff resides in the District;

      b.      Defendant MCM transacts business in the District via the telephone system;

      c.      Defendant MCM's phone calls to plaintiff registered an Illinois area code corresponding to 312 area code exchange;

      d.      Defendant MCM is licensed as a collection agency by the Illinois Division of Professional Regulation, License Number 017020397;

      e.      Defendant Midland Funding is licensed as a collection agency by the Illinois Division of Professional Regulation, License Number 017021204;

      f.      Defendant MCM's activities complained of done on behalf of Defendants Midland and Encore occurred within the District.

## PARTIES

### Plaintiff

8.      Plaintiff is an individual who resides in the Northern District of Illinois.

### Midland Funding

9.      Midland Funding is a limited liability company chartered under Delaware law. Midland is a subsidiary of Encore Capital Group, Inc.

10.      Midland Funding is engaged in the business of taking title to charged-off consumer debts, including credit card, auto deficiency and telecom receivables purchased from national financial institutions, major retail credit corporations, telecom companies and resellers of such portfolios (Encore's SEC filing on Form 10-Q, Aug. 8, 2008).

11.      Midland Funding's affiliate Midland Credit Management, Inc. attempts to collect the alleged debts via correspondence and telephone calls.  Midland Funding frequently files lawsuits to collect the debts.   Midland Funding is the plaintiff in about 500 lawsuits per month in Cook County alone.

12.      Midland Funding's principal place of business is 8875 Aero Drive, Suite 200, San Diego, CA 92123. Midland Funding's agent for the service of process in Illinois is Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703-4261.

13.      Midland Funding is a debt collector as defined in the FDCPA.

### Midland Credit Management

14.      Defendant MCM is a Kansas corporation with its principal place of business at 8875 Aero Drive, Suite 200, San Diego, CA 92123.   It is a subsidiary of Encore Capital Group, Inc.  MCM transacts business in Illinois. MCM's agent for the service of process in Illinois is Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703-4261.

3

15.     Defendant MCM is a collection agency and collects the charged-off debts purchased by other entities within the Midland organization, described below.

16.     Defendant MCM is a "debt collector" as defined in the FDCPA.

**Encore Capital Group**

17.     MCM and Midland Funding Corporation are under common ownership. Both are direct or indirect subsidiaries of Encore Capital Group, Inc., a publicly traded Delaware corporation, with offices at 8875 Aero Drive, Suite 200, San Diego, CA 92123.

18.     Encore raises money in public securities markets to acquire the debts which are transferred to Midland Funding or other similar entities and collected by MCM. Encore also is responsible for the overall collection strategies used to collect the accounts.

19.     Encore's webpage states "If you are one of our consumers, you probably know us as Midland Credit Management. Midland Credit Management is an Encore Capital Group subsidiary [.]" * * * "If you have received a letter or phone call from us, seen our name on your credit report, or received a letter or phone call from a law firm or collection agency acting on our behalf, it means that your obligation (credit card, auto loan, consumer loan, home or cell phone bill, student loan) to a lender is now your obligation to Midland, as a result of our agreement with that lender. Please give us a call or log into our site to create a repayment arrangement or discuss the status of your account."   http://www.encorecapital.com/consumers

20.     Encore describes itself as "a leading accounts receivable management firm" (Encore Capital Group Inc., Exhibit 99.1, filed with the SEC on March 15, 2006) and a "purchaser and manager of charged-off consumer receivables portfolios."   (Encore Capital Group Inc., Form 424B3, filed March 1, 2011, prospectus summary)

21.     On March 10, 2005, Encore stated to public investors that it is a "50 year old purchaser and manager of consumer receivables portfolios."  (Form 8-K filed by Encore with the SEC on March 10, 2005.)

22.     Encore acquires portfolios for an average of about 3.3 cents on the dollar. "From inception through December 31, 2010, we have invested approximately $1.8 billion to acquire 33.0 million consumer accounts with a face value of approximately $54.7 billion." (Form 10-K filed by Encore with the SEC for the year ending December 31, 2010, original p.1.)

23.     Encore states that it is responsible for developing collection strategies.  Its Form 10-K for the year ending December 31, 2010 states "We expand and build upon the insight developed during our purchase process when developing our account collection strategies for portfolios we have acquired. Our proprietary consumer-level collectability analysis is the primary determinant of whether an account is actively serviced post-purchase. Throughout our ownership period, we periodically refine this analysis to help determine the most effective collection strategy to pursue for each account."  (Original page 4)

24.     Among these strategies are outbound telephone calls.  "During 2010, we called approximately 8.6 million unique consumers, of which 1.8 million, or 21%, made contact with us."  (Encore Capital Group, Inc. report on SEC Form 10-K for the year ending December 31, 2010, original page 4)

25.     Similarly, in its Prospectus filed with the SEC on March 1, 2011, Encore Capital Group, Inc., stated ("Prospectus Summary"):

> **We are a systems-driven purchaser and manager of charged-off consumer receivable portfolios . . . We acquire receivable portfolios at deep discounts from their face values using our proprietary valuation process that is based upon an analysis of the individual consumer attributes of the underlying accounts. Based upon our ongoing analysis of these accounts, we employ a dynamic mix of collection strategies to maximize our return on investment. . .**

. Acquisitions of receivable portfolios are financed from operating cash flows and borrowings from third parties. . . .

We have been in the collection business for 56 years and started purchasing portfolios for our own account approximately 19 years ago. . . .

We have established certain relationships with credit card issuers, other lenders and resellers that allow us to purchase portfolios directly through negotiated transactions, and we participate in the auction-style purchase processes that typify our industry. In addition, we enter into "forward flow" arrangements in which we agree to buy receivables that meet agreed upon parameters over the course of the contract term.

We evaluate each portfolio for purchase using the proprietary valuation and underwriting processes developed by our in-house team of statisticians. Unlike many of our competitors, which we believe primarily base their purchase decisions on numerous aggregated portfolio-level factors, including the originator, the type of receivables to be purchased, or the number of collection agencies the accounts have been placed with previously, we base our purchase decisions primarily on our analysis of the specific accounts included in a portfolio. Based upon this analysis, we determine a value for each account, which we aggregate to produce a valuation of the entire portfolio. We believe this capability allows us to perform more accurate valuations of receivable portfolios. We have successfully applied this methodology to receivables across multiple asset classes.

After we purchase a portfolio, we continuously refine our analysis of the accounts to determine the best strategy for collection. As with our purchase decisions, our collection strategies are based on account level criteria. Our collection strategies include: . . .

    *    outbound calling, driven by proprietary, predictive software, by our own collection workforce located at our three domestic call centers and our international call center in India; . . .

26.    Encore is a "debt collector" as defined in the FDCPA.

## FACTS

27.    MCM, in a letter dated April 27, 2011, informed Plaintiff in part that "Midland Funding, LLC, has purchased your HSBC BANK NEVADA N.A account and Midland Credit Management, Inc. ('MCM'), a debt collection company, is the new servicer of this obligation."

6

28.     MCM uses at least one Automatic Dial Announcing Device which under Texas law is defined as any automated equipment used for telephone solicitation or collection that (1) is capable of storing numbers to be called, or has a random or sequential number generator capable of producing numbers to be called and (2) alone or in conjunction with other equipment, can convey a prerecorded or synthesized message to the number called without the use of a live operator.

29.     MCM uses at least one "Predictive Dialer" as defined by the Federal Commutation Commission ("FCC").

30.     On information and belief, MCM's Predictive Dialer is capable of dialing telephone numbers without human intervention.

31.     MCM's Predictive Dialer is capable of delivering an automated prerecorded message.

32.     Upon a phone call being answered by a live person, MCM's Predictive Dialer has the capability of transferring that phone call to a live operator.

33.     Plaintiff has a cellular telephone assigned the telephone number XXX XXX-0519. The first six digits of Plaintiff's cellular telephone number are redacted for privacy considerations.

34.     Plaintiff is the regular user of the cellular telephone and it is generally carried on his person.

35.     Plaintiff did not provide his cellular phone number to HSBC Bank Nevada N.A., the original creditor of the debt MCM was attempting to collect.

36.     On information and belief, Defendant obtained Plaintiff's cellular telephone number, XXX-XXX-0519, from HSBC Bank Nevada, N.A. who obtained it from

United Recovery Systems, LP, who on or about October 15, 2010, obtained it from Experian. On information and belief, Experian informed United Recovery Systems, LP the telephone number XXX-XXX-0519 was a cell phone number.

37. In a letter dated November 1, 2010, Plaintiff informed United Recovery Systems, LP, "Please stop calling my telephone number XXX-XXX-0519 for collecting the HSBC Bank account you tell me I owe:   Account No.: XXXXXXXXXXXX7795", which according to the United States Postal Service was received by United Recovery Systems, LP, on November 4, 2010.

38. Defendant MCM placed or caused to be placed phone calls in an attempt to reach Plaintiff at the telephone number XXX-XXX-0519, at a minimum, on or about the following dates and times:

        a.      April 27, 2011 at 8:19 a.m.;

        b.      April 27, 2011 at 5:03 p.m.;

        c.      April 28, 2011 at 8:11 a.m.;

        d.      April 28, 2011 at 9:45 a.m.;

        e.      April 29, 2011 at 10:13 a.m.;

        f.      April 30, 2011 at 9:55 a.m.;

        g.      May 1, 2011 at 10:09 a.m.;

        h.      May 2, 2011 at 8:07 a.m.;

        i.      May 3, 2011 at 8:05 a.m.;

        j.      May 3, 2011 at 9:12 a.m.;

        k.      May 3, 2011 at 11:36 a.m.;

        l.      May 3, 2011 at 12:43 p.m.;

m.      May 4, 2011 at 8:07 a.m.;

n.      May 5, 2011 at 8:12 a.m.;

o.      May 5, 2011 at 10:44 a.m.;

p.      May 5, 2011 at 2:23 p.m.;

q.      May 7, 2011 at 9:35 a.m.;

r.      May 7, 2011 at 10:40 a.m.;

s.      May 7, 2011 at 12:01 p.m.;

t.      May 8, 2011 at 10:39 a.m.;

u.      May 8, 2011 at 10:55 a.m.;

v.      May 8, 2011 at 11:30 a.m.;

w.      May 8, 2011 at 10:14 p.m.;

x.      May 9, 2011 at 9:30 a.m.;

y.      May 9, 2011 at 9:47 a.m.;

z.      May 9, 2011 at 9:55 a.m.;

aa.     May 10, 2011 at 8:03 a.m.;

bb.     May 10, 2011 at 8:36 a.m.;

cc.     May 10, 2011 at 8:52 a.m.; and

dd.     May 10, 2011 at 9:06 a.m.

39.     On information and belief, each phone call placed to Plaintiff by MCM was with the use of a Predictive Dialer, without a human hand manually dialing the telephone number.

40.     For each of these phone calls above, Plaintiff's caller ID registered "000."

41.     Plaintiff answered the call made on or about April 27, 2011 at 5:03 p.m., and was informed by a live person that the call was from Midland Credit.  In response, Plaintiff informed the caller to stop calling his telephone.

42.     MCM left the following messages for Plaintiff:

a.      "(Music Plays)."  Call transferred to a live person who said only, "Hello."  The call was then disconnected.

b.      "Hi Dave, Dave Scardina, hello?" The call was then disconnected.

c.      "(Music Plays).  All representatives are temporarily busy assisting other customers. Please continue to hold briefly.  (Music Plays).   We apologize for the delay. You will be connected in just a moment.  Please continue to hold briefly.  (Music Plays).  Thank you for your patience.   Your call is now next in line. We will connect you in just a moment.  (Music Plays)."  The call was then transferred to a live person who stated only, "Hello Dave, Mr. Scardina?" The call was then disconnected.

d.      "(Music Plays). All representatives are temporarily busy assisting other customers. Please continue to hold briefly.  (Music Plays). We apologize for the delay. You will be connected in just a moment.  Please continue to hold briefly.  (Music Plays).The call was then transferred to a live person who stated, "Hello? [unintelligible]" The call was then disconnected.

e.      "(Music Plays).   All representatives are temporarily busy assisting other customers. Please continue to hold briefly.  (Music Plays).

10

We apologize for the delay. You will be connected in just a moment. Please continue to hold briefly. (Music Plays). Thank you for your patience. Your call is now next in line. We will connect you in just a moment. (Music Plays)." The call was then transferred to a live person who only stated, "Hello. Hello." The call was then disconnected.

## COUNT I -- TCPA VIOLATION

43.    Plaintiff incorporates paragraphs 1-42 above.

44.    The Telephone Consumer Protection Act, 47 U.S.C. § 227, provides in pertinent part:

> **(b) Restrictions on use of automated telephone equipment.**
>
> > **(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–**
> >
> > > **(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–** * * *
> > >
> > > > **(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; . . .**

45.    Defendant MCM did not have prior express consent to call Plaintiff's cellular telephone number XXX XXX-0519 using an automatic telephone dialing service and/or an artificial or prerecorded voice.

46.    Plaintiff was the called party under the TCPA.

11

47.     The phone calls placed by MCM to Plaintiff's cellular telephone number violated the TCPA.

48.     Defendant Midland Funding, as the owner of the debt, is vicariously liable for MCM's violations of the TCPA.

49.     Encore Capital Group, Inc. raised the capital used to finance predictive dialing equipment used by MCM, directed MCM to use the equipment, and is liable for its participation in the collection activities.

## CLASS ALLEGATIONS

50.     Plaintiff brings this class action seeking damages on behalf of a class pursuant to Fed.R.Civ.P.  23(a) and 23(b)(3).

51.     Plaintiff also brings this class action seeking declaratory and injunctive relief to prohibit defendants from placing future telephone calls with an automatic telephone dialing service and/or an artificial or prerecorded voice to persons who did not provide prior express consent for their cellular telephone number to be called by defendants.

52.     The class consists of (a) all persons with cellular numbers in the Illinois area codes (217, 224, 309, 312, 331, 464, 618, 630, 708, 773, 779, 815, 847, or 872) (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), and on or before a date 20 days following the filing of this action, (c) received automated calls from defendant (d) where defendant's records do not show that the person provided the number to the defendant or the original creditor (for example, where the number was obtained through skip tracing or captured by the defendant's equipment from an inbound call).

53.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions relating to individual class members.

12

54.     The predominant question is whether calling persons' cellular telephones with an automatic telephone dialing service and/or an artificial or prerecorded voice without prior express consent violates the TCPA, and whether that conduct was willful.

55.     Plaintiff's claims are typical of the claims of the class members in that the alleged violations are all based on the lack of prior express consent.

56.     The class is so numerous that joinder of all the members is impractical.

57.     On information and belief, there are 40 persons who are identified by the class definition above.

58.     If even 1% of the 8.6 million consumers called by defendant MCM in 2010 are located in Illinois, that would amount to 86,000 persons.

59.     Plaintiff will fairly and adequately represent the members of the class.

60.     Plaintiff has retained experienced counsel in TCPA matters and class action litigation.

61.     A class action is superior for the fair and efficient adjudication of this matter in that:

a.     Defendants' course of conduct affects a large group of individuals;

b.     Multiple individual actions are not judicially economical; and

c.     The Class members are unaware that their rights have been violated.

**WHEREFORE**, Plaintiff requests this Honorable Court to enter judgment against Defendants for:

(1)     Statutory damages under the TCPA;

(2)     Costs of litigation; and

(3)     An injunction prohibiting defendants from future violations of the TCPA with respect to plaintiff and the class, along with corresponding declaratory relief.

## COUNT II – FDCPA

62.     Plaintiff incorporates paragraphs 1-42.

63.     Defendants' May 8, 2011 telephone call violated 15 U.S.C. §1692c because the call was placed after 9 o'clock postmeridian.

64.     Plaintiff did not give any of the Defendants prior consent to communicate with him after 9 o'clock postmeridian.

65.     Section 1692c provides, in pertinent part:

**§ 1692c.     Communication in connection with debt collection [Section 805 of P.L.]**

**(a) Communication with the consumer generally--Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt–**

**(1)     at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antimeridian and before 9 o'clock postmeridian, local time at the consumer's location**

## CLASS ALLEGATIONS

66.     This claim is brought on behalf of a class, consisting of (a) all persons (b) with telephone numbers in the Illinois area codes (217, 224, 309, 312, 331, 464, 618, 630, 708, 773, 779, 815, 847, or 872) (c) for whom defendant called after 9 o'clock postmeridian (d) where Defendants' records do not show that there was prior consent of the consumer given directly to the debt collector or that there was express permission of a court of competent jurisdiction (e)

14

during a period beginning one year prior to the filing of this action and ending 20 days after the filing of this action.

67.     The class is so numerous that joinder of all members is impracticable.

68.     There are more than 50 members of the class.

69.     There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members.  The predominant common question is whether defendants' calls violate the FDCPA.

70.     Plaintiff's claims are typical of the claims of the class members. All are based on the same legal and factual issues.

71.     Plaintiff will fairly and adequately represent the members of the class. Plaintiff has retained counsel experienced in the prosecution of debt collection abuse claims and class actions.

72.     A class action is superior for the fair and efficient prosecution of this litigation.  Classwide liability is essential to cause the defendants to stop their improper conduct. Many class members may be unaware that they have been victims of illegal conduct.

WHEREFORE, the Court should enter judgment in favor of plaintiff and against defendants for:

(a)     Statutory damages;

(b)     Attorney's fees, litigation expenses and costs of suit;

(c)     Such other and further relief as the Court deems proper.

15

Respectfully submitted,

s/ Daniel A. Edelman
Daniel A. Edelman


Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)


Curtis C. Warner       (6282197)
cwarner@warnerlawllc.com
Warner Law Firm, LLC
Millennium Park Plaza
155 N. Michigan Ave. Ste. 560
Chicago, Illinois 60601
(312) 238-9820 (TEL)

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that the Plaintiff's counsel claim a lien upon any recovery herein for 1/3 of that amount or such an amount as the Court awards.   All rights to attorney's fees have been assigned to counsel.


s/ Daniel A. Edelman
Daniel A. Edelman




## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on August 18, 2011, I caused to be filed the foregoing documents via the CM/ECF System.  I also caused the foregoing documents to be sent via US mail to the following:

Renee L. Zipprich
Theodore Seitz
James Golden
Dykema Gossett, PLLC
10 South Wacker Drive
Suite 2300
Chicago, IL  60606


s/ Daniel A. Edelman
Daniel A. Edelman